The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 18, 2019

**2019COA109**

**No. 18CA1622, *People in Interest of R.J.* — Juvenile Court —
Dependency and Neglect — Appeals**

A division of the court of appeals holds that a parent may

appeal a juvenile court's order adjudicating a child dependent and

neglected without first seeking district court review of a magistrate's

subsequent dispositional order.

Court of Appeals No. 18CA1622
Mesa County District Court No. 18JV50
Honorable Thomas W. Ossola, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of R.J., M.J., and A.J., children,

and Concerning G.J.J. and M.S.,

Respondents-Appellants.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE J. JONES
Román and Lipinsky, JJ., concur

Announced July 18, 2019

J. Patrick Coleman, Mesa County Attorney, Jeremy Savage, Chief Deputy County Attorney, Grand Junction, Colorado, for Petitioner-Appellee

Tammy Tallant, Guardian Ad Litem

Debra W. Dodd, Office of Respondent Parents' Counsel, Berthoud, Colorado, for Respondent-Appellant G.J.J.

Patrick R. Henson, Office of Respondent Parents' Counsel, Denver, Colorado, for Respondent-Appellant M.S.

¶ 1    In this dependency and neglect proceeding, G.J.J. (father) and M.S. (mother) appeal the district court's judgment adjudicating R.J., M.J., and A.J. (children) dependent and neglected. Before addressing the merits of their appeal, however, we must determine whether we have jurisdiction. To answer this question, we must decide whether a parent may appeal an adjudicatory order to this court without first seeking district court review of a magistrate's later dispositional order. We decide that a parent may. Having confirmed that we have jurisdiction over the appeal, we turn to the merits of the parents' challenge to the adjudicatory order, reject that challenge, and therefore affirm.

## I.    Background

¶ 2    The Mesa County Department of Human Services (Department) filed a petition in dependency or neglect alleging that the children lacked proper parental care and that their environment was injurious to their welfare. Both parents denied the allegations and requested an adjudicatory jury trial. After a three-day trial, the jury returned a special verdict finding the children dependent and neglected.

1

¶ 3     A magistrate later entered dispositional orders as to both father and mother that continued out-of-home placement for the children and adopted treatment plans for both parents. Father asked for more time to file a petition for review of the magistrate's dispositional order with the district court. The district court granted that request; however, no petition for review appears in the record.

¶ 4     Father then filed a request with this court to file his notice of appeal out of time. Therein, he observes that while C.A.R. 3.4(b)(1) and section 19-1-109(2)(c), C.R.S. 2018, read in combination, require a party to file a notice of appeal of an adjudicatory order and designation of transcripts within twenty-one days after the entry of the dispositional order, C.R.M. 7(a)(11) requires a party to seek district court review of a magistrate's dispositional order before seeking appellate review in this court. This, he says, creates uncertainty, and he asks us to decide whether this court has jurisdiction to review an adjudicatory order when a magistrate later enters the dispositional order but no one seeks district court review of that order.

¶ 5     We ordered the parties to address in their principal briefs the finality — that is, the appealability — of the adjudicatory order. Mother then filed a notice of appeal, asked that we accept it out of time, and also asked that she be allowed to join father's briefs. We granted mother's requests.

## II.     Finality of the Adjudicatory Order

¶ 6     Before we can decide the parents' challenge to the adjudication of the children as dependent and neglected, we must decide whether their failure to first seek review of the magistrate's dispositional order means that we lack jurisdiction over their appeal. *See People in Interest of J.C.*, 844 P.2d 1185, 1187 (Colo. 1993). We hold that it does not.

### A.  Standard of Review and Interpretive Principles

¶ 7     Whether determining the meaning of a statute or a rule — and in this case we do both — we review de novo. *People in Interest of L.M.*, 2018 CO 34, ¶ 13 (statute); *In Interest of M.K.D.A.L.*, 2014 COA 148, ¶ 5 (rule).

¶ 8     In interpreting a rule, we apply the same principles that we use when interpreting a statute. *Willhite v. Rodriguez-Cera,* 2012 CO 29, ¶ 9. Chief among these principles is that we must give

3

effect to the intent of the body that adopted the rule or statute and apply the construction that best effectuates that intent. *People in Interest of H.T.*, 2019 COA 72, ¶ 12; *see People in Interest of J.D.*, 2017 COA 156, ¶ 9 (*cert. granted* Sept. 17, 2018). To do so, we start by looking to the language of the rule or statute, giving the words and phrases used therein their plain and ordinary meanings. *H.T.*, ¶ 12; *M.K.D.A.L.*, ¶ 5. We should not add words or phrases to a rule or statute, and, relatedly, we should presume that the inclusion of certain terms in a rule or statute implies the exclusion of others. *H.T.*, ¶ 12; *People in Interest of J.J.M.*, 2013 COA 159, ¶ 7. And we must also presume that the adopting body intended a just and reasonable result; so we should avoid interpretations leading to absurd results. *Leaffer v. Zarlengo*, 44 P.3d 1072, 1078-79 (Colo. 2002); *H.T.*, ¶ 12; *People in Interest of J.L.R.*, 895 P.2d 1151, 1154 (Colo. App. 1995).

### B.  Statutory Framework

#### 1.  The Adjudication and Disposition

¶ 9     The Children's Code provides for a bifurcated proceeding in dependency and neglect actions. *E.O. v. People in Interest of C.O.A.*, 854 P.2d 797, 800 (Colo. 1993). In the first phase, after a petition

in dependency or neglect is filed, the court determines if there are grounds to adjudicate the child dependent or neglected.  If a parent contests the allegations in the petition, that parent can request a bench or jury trial in which the petitioner (usually a local department of human services) must prove the allegations by a preponderance of the evidence.  §§ 19-3-202, 19-3-505, C.R.S. 2018; *People in Interest of A.M.D.*, 648 P.2d 625, 641 (Colo. 1982).  If the department fails to carry its burden, then the juvenile court should dismiss the case, vacate all orders regarding the child, and relinquish its jurisdiction.  § 19-3-505(6).  But if the department proves the allegations by a preponderance of the evidence, the court should sustain the petition and adjudicate the child dependent or neglected.  § 19-3-505(7).

¶ 10    If the court sustains the petition, the second phase — the dispositional phase — kicks in.  The purpose of the dispositional hearing is to devise a proper dispositional order serving the interests of the child and the public.  §§ 19-1-103(43), 19-3-507(1)(a), C.R.S. 2018.  In this phase, the court must address dispositional alternatives and adopt a treatment plan for the parent.  § 19-3-507; *see People in Interest of C.L.S.*, 934 P.2d 851, 853 (Colo.

App. 1996). A bit more specifically, the court must determine the child's legal custody, decide whether an appropriate treatment plan can be devised to address the concerns that led to the department's involvement, and, if so, approve an appropriate treatment plan.

### 2. Adjudicatory Appeals

¶ 11    C.A.R. 3.4(a), which governs appeals in dependency and neglect cases, provides that a party may appeal orders from dependency and neglect proceedings as permitted by section 19-1-109. In turn, section 19-1-109(1) says that "[a]n appeal as provided in the introductory portion to section 13-4-102(1), C.R.S. [2018], may be taken from any order, decree, or judgment." Subsection (2)(c) of the same statute provides that "[a]n order decreeing a child to be neglected or dependent shall be a final and appealable order after the entry of the disposition pursuant to section 19-3-508."

### C. Analysis

¶ 12    The Department and the guardian ad litem (GAL) argue that we lack jurisdiction to review the adjudicatory order because neither parent filed a petition for review of the dispositional order with the district court in accordance with section 19-1-108(5.5), C.R.S. 2018. That section says that "[a] petition for review [of a

magistrate's order] is a prerequisite before an appeal may be filed with the Colorado court of appeals or Colorado supreme court." *Id.* But we conclude that this statute isn't an impediment to an appeal of the adjudicatory order.

¶ 13    We begin by noting that the juvenile court has exclusive original jurisdiction in dependency and neglect proceedings. § 19-1-104(1)(b), C.R.S. 2018. Unless a party asks for a jury trial, a magistrate may hear any case or matter under the juvenile court's jurisdiction. §§ 13-5-201(3), 19-1-108(1), C.R.S. 2018.

¶ 14    Father and mother are only asking us to review the adjudicatory order; they don't ask to review the dispositional order. As noted, the district court entered the adjudicatory order, whereas the magistrate entered the dispositional order. The plain language of section 19-1-109(2)(c) provides that an order decreeing a child to be dependent or neglected — that is, an adjudicatory order — "shall be a final and appealable order after the entry of the disposition." No language in the statute requires that the dispositional order also be final. Nor is there any language in the statute requiring district court review of a dispositional order before a parent may appeal the adjudicatory order. And section 19-1-108(5.5), on which the

Department and the GAL rely, plainly applies to appeals of a magistrate's order. To repeat, neither parent appeals the magistrate's dispositional order.

¶ 15    True, an adjudicatory order isn't final until the court enters a dispositional order. § 19-1-109(2)(c). But no statute or rule says that an adjudicatory order isn't final until a district court reviews a magistrate's dispositional order. And section 13-4-102(1) says the court of appeals has "initial jurisdiction over appeals from final judgments" in civil cases.

¶ 16    Further, requiring judicial review of a dispositional order that was entered by a magistrate, but that no one challenges, would lead to an absurd result. The purpose of district court review of a magistrate's order is to give the district court "an opportunity to correct any error that may have been made by the magistrate." *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006). If no one asserts error, requiring the district court to review dispositional findings as a prerequisite to a parent's appeal of the adjudication would unnecessarily expend judicial resources and thwart the state's interest in the expeditious resolution of dependency and neglect proceedings. *See* § 19-1-102(1.6), C.R.S.

2018; *People in Interest of A.J.*, 143 P.3d 1143, 1146 (Colo. App. 2006).[1]

¶ 17    For these reasons, we conclude that the adjudicatory order was a final, appealable order.[2]

### III.    Jury Selection

¶ 18    Father and mother argue that the juvenile court's active participation in jury selection — by exercising peremptory challenges allocated to but unused by one of the parties — violated their due process rights and rendered the jury trial fundamentally unfair.  It may be the court erred by purporting to exercise the unused peremptory challenges.  But even if it did so, we see no prejudice to the parents.

### A.    Applicable Law

¶ 19    "Parents have a fundamental liberty interest in the care, custody, and control of their children."  *In re D.I.S.*, 249 P.3d 775,

---

[1] Despite the lack of any appeal of the dispositional order in these circumstances, were we to reverse the adjudicatory order, the dispositional order, which is predicated on the adjudicatory order, would also fall.

[2] Given our resolution of this issue, we need not address the parents' arguments regarding magistrate consent.

780 (Colo. 2011); *accord Troxel v. Granville*, 530 U.S. 57, 65 (2000). When a court decision will effectively eliminate or weaken familial bonds by terminating parental rights or denying custody, parents must first receive fundamentally fair procedures. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *D.I.S.*, 249 P.3d at 781-82.

¶ 20    If a respondent parent denies the allegations in the petition for dependency and neglect, the respondent, a petitioner, a GAL, or the court may demand a jury of not more than six. C.R.J.P. 4.3(a).

¶ 21    In dependency and neglect proceedings, "[e]xamination, selection, and challenges for jurors in such cases shall be as provided by C.R.C.P. 47, except that the petitioner, all respondents, and the guardian ad litem shall be entitled to three peremptory challenges. No more than nine peremptory challenges are authorized." C.R.J.P. 4.3(b). This rule supersedes C.R.C.P. 47(h), which says that each side is entitled to four peremptory challenges. *See* C.R.J.P. 1 ("Proceedings [in the juvenile court] are civil in nature and where not governed by these rules or the procedures set forth in [the Children's Code], shall be conducted according to the Colorado Rules of Civil Procedure.").

¶ 22    "The purpose of allowing peremptory challenges is to enable a party to reject certain jurors based upon a subjective perception that they may be adverse or unsympathetic to his position even though no basis for a challenge for cause exists." *Fieger v. E. Nat'l Bank*, 710 P.2d 1134, 1136 (Colo. App. 1985).  While peremptory challenges are not constitutionally required, the right to exercise such challenges is a substantial one.  *Id.*  However, "impairment of the ability to shape a jury is no longer considered a due process violation, and, more generally, a violation of a substantial right occurs only where the error has had a substantial impact on the outcome of the case." *Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 23.  And, an error affects a substantial right only if "it can be said with fair assurance that the error substantially influenced the outcome of the case *or impaired the basic fairness of the trial itself*." *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (emphasis added) (citation omitted); *see* C.R.C.P. 61.

¶ 23    When applying the harmless error standard to an error in jury selection, "[w]hile the strength of the evidence supporting a verdict is often an important consideration, so too is the specific nature of the error in question and the nature of the prejudice or risk of

11

prejudice associated with it." *Johnson v. Schonlaw*, 2018 CO 73,

¶ 12 (citing *People v. Roman*, 2017 CO 70, ¶ 14).

## B. Analysis

¶ 24    The juvenile court called nineteen prospective jurors to the

jury box.  Initially, the court gave each party — the Department, the

GAL, and the parents together — three peremptory challenges each,

as allowed by C.R.J.P. 4.3(b).  But after counsel pointed out that

ten, rather than six, jurors would remain if each party exercised all

their peremptory challenges, the court gave four to each party, in

apparent violation of C.R.J.P. 4.3(b), which, as noted, limits

peremptory challenges to three per party (counting all respondents

as one party) and a total of nine.

¶ 25    Following voir dire, no one challenged any prospective juror for

cause.  The parties then began using their peremptory challenges.

During that process, the Department's counsel asked the court if all

parties were required to use all their peremptory challenges.  The

court responded, "What you don't use, I'll use . . . .  If you waive

and accept I'll exercise challenges to get down . . . to six."  The

parties, while seemingly surprised, didn't object to this procedure.

In the end, the Department and the parents each used all of their

respective peremptory challenges, but the GAL used only two. This left nine jurors, one or two more than the six plus one or two alternates allowed by the rules. *See* C.R.J.P. 4.3(a); C.R.C.P. 47(b).

¶ 26    The juvenile court then apparently used the GAL's remaining challenges to excuse two potential jurors. The court excused a potential juror who had indicated she was taking medication that required her to use the bathroom frequently and another man "for no really good reason other than the fact that he's recently participated in a dependency and neglect environment and that may just be too close."

¶ 27    Father and mother argue that the court's actions violated their due process rights. The Department and GAL counter that father and mother have failed to show how the court's actions substantially impacted the outcome of the jury trial; in essence, they assert that any error was harmless. Father and mother reply that it is impossible for them to state with specificity how the jurors removed by the judge could have affected jury deliberations.

¶ 28    The court may have erred by using the GAL's peremptory strikes to excuse two prospective jurors. We say "may" because the court was required to excuse at least one prospective juror to

13

comply with C.R.J.P. 4.3(a) and C.R.C.P. 47(b). So any error may have been more semantic than substantive.

¶ 29    In any event, we conclude that any error was harmless, for four reasons. First, as noted, the court was required to pare down the jury to six in accordance with C.R.J.P. 4.3(a). Second, the court explained its reasons for dismissing the jurors, and those reasons were pragmatic; they didn't suggest any bias on the court's part. Third, neither parent objected contemporaneously to the court's dismissal of the two jurors. Lastly, neither parent has articulated how the court's actions resulted in a proceeding that was fundamentally unfair or how they were otherwise prejudiced. In this respect, we note that they didn't challenge any of the jurors who ultimately served on any basis; they have never asserted that any of these jurors lacked impartiality.[3] And no authority recognizes a party's right to a particular mix of impartial jurors. *Washington v. People*, 186 P.3d 594, 600 (Colo. 2008) (a defendant isn't "entitled to a jury of any particular composition") (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)); *People v. Vigil*, 2015

---

[3] The parents didn't challenge any prospective juror for cause.

COA 88M, ¶ 24 ("[A] defendant is not entitled to have any particular juror serve in his or her case.") (*cert. granted* Mar. 20, 2017).

## IV.   Conclusion

¶ 30    The judgment is affirmed.

JUDGE ROMÁN and JUDGE LIPINSKY concur.