24CA0730 Peo in Interest of ST 10-24-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0730
San Miguel County District Court No. 24JV30000
Honorable Keri A. Yoder, Judge

The People of the State of Colorado,

Appellee,

In the Interest of S.T., a Child,

and Concerning R.G.T, III and K.H.,

Appellants.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

Amy T. Markwell, County Attorney, W. Herbert McHarg, Special County
Attorney, Telluride, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for
Appellant R.G.T., III

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski,
Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant K.H.

¶ 1    In this dependency and neglect proceeding, R.T., III (father) and K.H. (mother) appeal the juvenile court's judgment adjudicating S.T. (the child) dependent and neglected following a jury trial.  We affirm the judgment.

## I.    Background

¶ 2    The San Miguel County Department of Human Services filed a petition in dependency or neglect regarding the two-month-old child.  The petition alleged that the Department received reports that the parents were living in a home with no running water and that they used substances in the home.  The parents agreed to a short-term safety plan whereby the paternal uncle would supervise all family time between the parents and the child.  A doctor saw the child shortly after the safety plan was implemented and contacted the Department with concerns about the child's low weight and suspected drug use by mother based on her behavior at the appointment.  Law enforcement later secured and executed a search warrant on the home where the parents were purportedly living and, according to the petition, found between seventy-five and one hundred methamphetamine pipes, evidence of marijuana distribution, and no running water or sewer services.  The parents

1

were arrested on drug related charges and child abuse, and the Department took custody of the child.

¶ 3 Mother and father demanded a jury trial, which the court held over two days. After hearing evidence, the jury found that (1) mother and father mistreated or abused the child or tolerated or allowed another person to mistreat or abuse the child without taking steps to stop it; (2) the child lacked proper parental care as a result of mother's and father's acts or failures to act; (3) the child's environment was injurious to her welfare; and (4) mother and father failed or refused to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for her health, guidance, or well-being. *See* § 19-3-102(1)(a)-(d), C.R.S. 2024.

## II.    Drug Test Results

¶ 4 Both mother and father argue that the juvenile court erred when it admitted the results of father's positive urine test for methamphetamine and the child's positive hair test for marijuana as records of regularly conducted activity under CRE 803(6). We are not persuaded.

2

## A. Standard of Review and Applicable Law

¶ 5    We review a juvenile court's evidentiary rulings for an abuse of discretion. *People in Interest of M.H-K.*, 2018 COA 178, ¶ 60. The court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9.

¶ 6    To qualify a document for admission under CRE 803(6), a proponent must establish several criteria that are not at issue here. Even if the proponent satisfies these requirements, the court may still exclude the evidence if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." CRE 803(6).

¶ 7    An error in the admission of evidence is harmless if it does not affect a substantial right of a party. CRE 103(a); C.R.C.P. 61. An error affects a substantial right if it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself. *People in Interest of R.J.*, 2019 COA 109, ¶ 22.

B.     Analysis

¶ 8     At trial, father objected to the admission of the drug test results because the laboratory directors who testified did not conduct the testing themselves and because "the record itself did not purport to describe the chain of custody prior to its arrival." After further testimony, during which both laboratory directors testified that they were the "ultimate supervisors" for everyone conducting testing in their laboratories and that they had reviewed the individual results, the court admitted the exhibits showing the positive test results.

¶ 9     On appeal, mother argues that the juvenile court erred because each director had "minimal knowledge" of the specific samples. But the director of the laboratory that tested the child's hair stated that he "reviewed all the data the same as a certifying scientist . . . that was generated by the lab to ensure that it was accurate" and the director of the laboratory that tested father's urine sample stated that he conducted his own review and found "no issues with the testing process or any of our internal processes during the testing of [the] sample." Mother argues that "it is unclear what this procedure [of review] entailed and what data was

reviewed, aside from the quantitative result." As best we understand her, mother argues that the lab directors' "minimal knowledge" and the "unclear methods" by which they reviewed the data "indicate[s] a lack of trustworthiness" under CRE 803(6). But we cannot address this contention because mother didn't raise it below. *See People in Interest of V.W.*, 958 P.2d 1132, 1135 (Colo. App. 1998) (declining to address contentions that were not presented to the juvenile court).

¶ 10    Both parents also contend that the juvenile court erred because none of the witnesses testified about the "chain of custody" for the samples. Specifically, they argue that the supervisor at the collection facility did not personally observe the collection of the samples. And they assert that the laboratory directors did not personally verify the chain of custody. We disagree.

¶ 11    The supervisor at the collection facility described the process by which his company generated unique identifying numbers for the samples, collected the urine and hair under supervision, sealed and signed the samples, and sent them out for testing. Additionally, the directors of the testing laboratories described their

process of verifying the chain of custody and examining the samples for tampering and irregularities.

¶ 12    There was no evidence of tampering or lack of authentication. Thus, the Department was not required to call each witness who may have handled the samples. *See People v. Sutherland*, 683 P.2d 1192, 1197 (Colo. 1984); *see also People v. Smith*, 512 P.2d 269, 271 (Colo. 1973) ("When it is only speculation that there was tampering, it is proper to admit the evidence and let the jury determine its weight.").

¶ 13    Moreover, even if the juvenile court erred when it admitted the results of father's and the child's drug tests, any error was harmless. *See* CRE 103(a); C.R.C.P. 61. Recall that the jury found the child dependent and neglected on four separate grounds, including that she lacked proper parental care and her environment was injurious to her welfare. In addition to father's and the child's test results, the jury heard evidence about the parents' drug use, their living environment, and care of the child. This evidence also supported the jury's verdict.

¶ 14    For example, the officer who executed a search warrant at the house where the parents purportedly lived testified that he found

multiple broken and intact methamphetamine pipes, four bags of individually bagged marijuana with a pile of empty bags next to a scale, a rifle, and multiple knives. The jury also saw several pictures of the home taken during the search showing drugs, drug paraphernalia, and rooms and hallways obstructed by trash and debris.

¶ 15     Although the parents denied living in the home with the child, the officer testified that in one bedroom he observed between 100 and 150 dirty diapers and a baby monitor that was still transmitting a signal. And a family friend testified that she had seen the parents with the child in the home and that they appeared to be living there. She further testified that she saw the child sleeping on a sofa next to a needle. Moreover, the caseworker testified that both parents were taken into custody following the search, leaving no one to care for the child.

¶ 16     Mother admitted she used marijuana and alcohol while she was pregnant and that she had positive tests for methamphetamine while she was pregnant. And she testified that she continued to use marijuana while breast feeding. Although father testified that he had not used methamphetamine in at least twenty years, the

jury heard testimony from a family friend who said she had used with father on multiple occasions at his home and as recently as 2021. The family friend testified that mother appeared intoxicated while caring for the child, and the caseworker had similar concerns about both parents. Both parents admitted that the water at the home was not working.

¶ 17 Additionally, the jury heard testimony from the child's doctor who testified that the child was not gaining weight at the expected rate and was diagnosed with "failure to thrive." The doctor testified that the child had been seen on January 8 and was to return frequently for additional weight checks. The caseworker testified that another appointment was scheduled for January 11, but by the time the parents were arrested later on that date, they had not taken the child for that appointment.

¶ 18 Based on this evidence, even without the results of the child's hair and father's urine test, the jury had sufficient evidence to support the determination that the child was dependent and neglected.

### III. Disposition

¶ 19 We affirm the judgment.

JUDGE FREYRE and JUDGE GROVE concur.