24CA1819 Peo in Interest of SDM 04-10-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA1819
City and County of Denver Juvenile Court No. 24JV30307
Honorable Laurie A. Clark, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of S.D.M. and D.M., Children,

and Concerning J.W.M.,

Appellant.

_____

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

_____

Katie McLoughlin, Acting City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, J.W.M. (father) appeals the judgment adjudicating S.D.M. and D.M. (the children) dependent or neglected.  We affirm.

## I.    Background

¶ 2    In March 2024, Denver Human Services (the Department) received a referral regarding a family violence incident in which father threw several large rocks through the maternal grandparents' apartment windows.  At the time, then-nine-month-old S.D.M. was in the apartment, and the grandparents reported that the rocks had almost hit him.  When law enforcement responded to the scene, father fled, but officers eventually found and arrested him.  As a result of this incident, father was charged with child abuse.  He was also charged with assault of an at-risk adult after law enforcement learned that a few days earlier, S.D.M.'s great-grandfather had tried to intervene in an argument between the parents, and father struck him, knocking out several of his teeth.

¶ 3    Over the following two months, the Department conducted a safety assessment of the family.  During that time, father remained in custody, and S.D.M. remained in mother's care at the maternal grandparents' home.  In early April 2024, the Department requested

hair follicle testing of S.D.M., which yielded positive results for amphetamine/methamphetamine, cocaine, cannabinoids/THC, and fentanyl. Around the same time, mother's urinalysis (UA) test results were positive for marijuana, and the maternal grandparents' UA results were positive for marijuana and alcohol. The Department also discovered that mother's family had ongoing concerns about domestic violence between the parents and that father had a history of substance abuse and drug-related criminal activity.

¶ 4 At the end of April 2024, mother gave birth to a second child, D.M. Around the same time, father pleaded guilty to the child abuse and assault charges. He was sentenced to probation and released from jail. Shortly thereafter, mother left the older child S.D.M. with the maternal grandparents and took the newborn child D.M. to see father. The maternal grandparents could not contact mother, and the Department became concerned about D.M.'s safety because mother's whereabouts were unknown. Based on those concerns, the Department requested emergency temporary custody of both children, which the juvenile court granted. The Department also filed a petition in dependency neglect regarding both children.

¶ 5     The next day, mother brought D.M. to the courthouse, and the Department placed both children with kin.  The parents appeared before the juvenile court, and the court appointed counsel for them, but father's appointed counsel was unavailable to appear that day. A few days later, father appeared with his counsel, who waived formal service and advisement on father's behalf.  Three weeks later, father denied the allegations in the petition and requested a jury trial, which the court scheduled.

¶ 6     At the pre-trial conference, father's counsel said that she and father had "discussed" his "right to an attorney," but father wanted to represent himself.  Father then confirmed that he understood he would "be under all the same obligations as an attorney in regards to the procedure" and reiterated that he wanted to represent himself.  The court granted father's request and terminated counsel's appointment.  The court also asked father whether he would like to proceed with the jury trial or have a court trial instead, and he said that he wanted a trial "to the court." Accordingly, the court scheduled a court trial, and father confirmed that he would be able to attend and bring any witnesses he wanted to examine.

¶ 7    On the day of the trial, father failed to appear. The county attorney and the caseworker both reported that they had attempted to contact him and that he had not returned their calls. The court's clerk then tried to call father twice, but he did not answer. The court proceeded with the trial, but the Department had time to call only one witness — a police officer. The court scheduled the second half of the trial for two days later, and the county attorney confirmed that the caseworker would call father to let him know. But father did not appear for the second half of the trial either. Again, the court attempted to call him, and he did not answer. The court proceeded with the trial, and the Department called one more witness — the caseworker. After considering the evidence, the court found that the children's environment was injurious to their welfare and that father had subjected S.D.M. to mistreatment or abuse. Thus, the court adjudicated the children dependent or neglected.

¶ 8    About a month later, father appeared at the dispositional hearing. He requested that the juvenile court reappoint counsel, and the court did so. The court continued the dispositional hearing to enable father to consult with counsel about the proposed

treatment plan. The court later held a dispositional hearing at which father did not appear, but his counsel did. The court adopted the proposed treatment plan but allowed father fourteen days to object. After the fourteen-day objection period passed without an objection from father, the court entered a final dispositional order.

## II. Statutory Framework

¶ 9 The purpose of an adjudicatory trial is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence and whether the status of the child warrants intrusive protective or corrective state intervention into the familial relationship. *People in Interest of G.E.S.*, 2016 COA 183, ¶ 13. A child may be adjudicated dependent or neglected if the government proves that one or more of the conditions set forth in section 19-3-102, C.R.S. 2024, exists. *People in Interest of S.M-L.*, 2016 COA 173, ¶ 25, *aff'd on other grounds sub nom People in Interest of R.S. v. G.S.*, 2018 CO 31. A child is dependent or neglected if, as relevant here, "[a] parent, guardian, or legal custodian has . . . subjected [the child] to mistreatment or

abuse" or "[t]he child's environment is injurious to [the child's] welfare." § 19-3-102(1)(a), (c).

### III. Conversion of the Jury Trial to a Court Trial

¶ 10    As best we understand it, father contends that juvenile court erroneously converted the jury trial to a court trial. He argues that the court failed to sufficiently advise him of the consequences of representing himself and opting for a court trial. And he asserts that if the court had not converted the jury trial to a court trial, then he might have been able to attend the trial because it likely would have occurred on a later date, and he would not have been in jail.[1]

¶ 11    Father concedes that he did not preserve his claim for appeal. Indeed, he did not request a more robust advisement regarding his right to counsel before the juvenile court terminated counsel's appointment, nor did he object to the procedure when the court converted the jury trial to a court trial. In fact, he specifically requested to represent himself at a court trial. And even after the adjudicatory trial occurred and the juvenile court reappointed

---

[1] Although the record does not establish that father was in jail at the time of the court trial, no party disputes this fact on appeal.

counsel, father never filed a post-trial motion or argued that the court had improperly advised him, held a court trial, or held the trial in his absence.

¶ 12   Nevertheless, father urges us to review his appellate claim to avoid a miscarriage of justice. But the miscarriage of justice exception has a high bar and a narrow scope, applying only to limited situations in which an error by the juvenile court, not otherwise properly preserved for appeal, results in a grossly unfair outcome for the parent. *See People in Interest of M.B.*, 2020 COA 13, ¶¶ 23-24; *see also People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996). Father's arguments do not establish that the court's adjudicatory judgment created such a result.

¶ 13   First, father argues that the juvenile court failed to advise him of his legal rights and appoint counsel at his first appearance. But the record shows otherwise. The court appointed counsel for father at his first appearance, even though counsel could not appear that day. Then counsel appeared just three days later and waived advisement on father's behalf. Although father claims that the court's failure to appoint counsel who was available at the time of his first appearance "delay[ed] his ability to receive legal advice," he

does not explain what legal advice he would have received or how receiving that legal advice three days earlier would have altered the outcome of the adjudicatory trial. And we cannot find anything in the record demonstrating that the adjudicatory trial was unfair based on counsel's absence from father's first appearance or that the outcome of the adjudicatory trial would have been different if counsel had been present at the first appearance. *See* C.A.R. 35(c); *see also People in Interest of R.J.*, 2019 COA 109, ¶ 22 (an error or defect only requires reversal if it affects a substantial right, meaning that it can be said with fair assurance that the error or defect substantially influenced the case's outcome or impaired the basic fairness of the trial itself); *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007) (even for a due process claim, a parent may not obtain relief absent a showing of harm or prejudice).

¶ 14 Second, father argues that the juvenile court insufficiently advised him when he asked to terminate his counsel and represent himself. But father does not cite any legal authority to support his argument that the court should have gone "beyond [its] surface-level inquiry" and explained father's specific responsibilities as a self-represented party. Nor does he claim that his waiver of

counsel was involuntary, and nothing in the record indicates that it was. *See People in Interest of B.H.*, 2021 CO 39, ¶¶ 65-70 (in dependency and neglect proceedings, a parent's statutory right to counsel is waivable; the waiver can be express or implied and must only be voluntary, not knowing or intelligent). In fact, he does not even assert that a more detailed advisement would have persuaded him to change his decision to terminate his counsel. *See R.J.*, ¶ 22; *J.A.S.*, 160 P.3d at 262.

¶ 15 Third, father argues that the juvenile court erred by asking if father wanted a jury trial or a court trial after he asked to represent himself. He also asserts that the court's inquiry constituted "disparate treatment" between him and mother because the court did not make the same inquiry of mother at that time. But again, he does not provide any legal authority to support these assertions. Nor does he claim that his jury trial waiver was involuntary, and nothing in the record indicates that it was. *See People in Interest of C.C.*, 2022 COA 81, ¶ 11 (parents in dependency and neglect cases have a statutory right to demand an adjudicatory jury trial); *B.H.*, ¶ 69 (waiver of a statutory right must be voluntary, but need not be knowing or intelligent).

¶ 16     Last, father argues that if the court had not converted the jury trial to a court trial, then the trial likely would have occurred on a later date, and he may have been able to attend.  He reasons that if the court had "respected" his "initial jury demand," then the "effect of [his] absence from the trial" would have been "negat[ed]."  But this argument is pure speculation; it assumes that the court would have held the jury trial on a later date and that father would have appeared on that unknown date.

¶ 17     Even if we make those assumptions, however, father does not explain what the "effect" of his absence from the court trial actually was or how his presence would have made a difference in the outcome at this stage.  Said differently, he does not explain what evidence he would have presented, what arguments he would have made, or how his presence at trial would have changed the juvenile court's findings and determination that the Department met its burden to prove one or more of the conditions set forth in section 19-3-102 existed.  *See S.M-L.*, ¶ 25.  Based on our independent review of the record and consideration of the ample evidence presented by the Department, we cannot conclude that father's

10

presence would have changed the outcome of the adjudicatory trial. *See R.J.*, ¶ 22; *J.A.S.*, 160 P.3d at 262.

¶ 18    Based on the foregoing, we discern no miscarriage of justice and reject father's claim raised for the first time on appeal.

## IV.   Disposition

¶ 19    The judgment is affirmed.

JUDGE J. JONES and JUDGE YUN concur.