25CA2046 Peo in Interest of H-SKR 05-07-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA2046
City and County of Denver Juvenile Court No. 23JV30929
Honorable Laurie Clark, Judge

The People of the State of Colorado,

Appellee,

In the Interest of H-S.K.R., a Child,

and Concerning J.R.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE FOX
J. Jones and Dunn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, J.R. (mother) appeals the judgment terminating her parent-child legal relationship with H-S.K.R. (the child).  We affirm.

## I.     Background

¶ 2     The Denver Department of Human Services received a report that mother had gone to a hospital claiming to be pregnant when she was not.  Mother later returned to the hospital, stating that she was in active labor.  Hospital staff placed her on a mental health hold and reported that she appeared disengaged from her then three-year-old child and disinterested in the child's basic care.  The Department removed the child and filed a petition in dependency and neglect.

¶ 3     The juvenile court adjudicated the child dependent and neglected.  The court adopted a treatment plan for mother requiring her to (1) provide active, stable parenting, including through family time; and (2) address her mental health to ensure a safe environment for the child.  The court later ordered mother to take a hair follicle test and added a substance use component to her treatment plan.

¶ 4     The court appointed an attorney for mother during the first hearing in the case.  At the second hearing, it granted her counsel's request to appoint mother a guardian ad litem (GAL).  While the court did not explain why it was appointing a GAL for mother, it later found that she had a "disability" or a "mental health disability."

¶ 5     Mother's counsel and her GAL asked to withdraw from the case multiple times.  The court denied her counsel's first withdrawal request.  At that point, mother's GAL noted that mother had directed the GAL and counsel not to contact mother in any way.  Later, both mother's counsel and the GAL moved to withdraw at mother's request.  The court denied the GAL's motion.  After an advisement by the court, mother said that she no longer wished for her attorney to withdraw.

¶ 6     A year and a half into the case, mother's counsel and the GAL again moved to withdraw, each citing a breakdown in communication with mother.  The court allowed both to withdraw.  Around the same time, the Department moved for termination.  Mother's GAL asked the court to appoint a new GAL, but the court instead directed mother's former counsel to notify the office of

respondents' parent counsel (ORPC) of mother's withdrawal requests and the termination motion:

> [Mother's former counsel,] if you will just let ORPC know that [mother] has asked for the withdrawal of both attorney and guardian ad litem and that there's a . . . motion for termination pending. So if you'll at least put them on notice, I'd appreciate that. . . .
>
> I know everybody would like to help [mother] the best they can, and [mother] is struggling to accept that help, but if there is a way that ORPC can engage her indirectly, that would be great, and I'd be happy to appoint based on their recommendation. . . .
>
> I'm not going to appoint another guardian ad litem at this point because I'm not clear that that's what [mother] wants or will engage with, and I think I [will] just set that person up for failure unless ORPC can engage her.

¶ 7    Over a year into the case, mother completed a psychological evaluation. The evaluator opined that mother experienced "multiple diagnoses including paranoia, somatic symptoms, and possibly a history of substance use that interfere with daily functioning" and noted it was highly likely she met the diagnostic criteria for post-traumatic stress disorder (PTSD). The evaluator wished to meet with mother to explain the evaluation but, after receiving

3

"threatening communication" from her, was willing to do so only if her counsel "and/or" someone with the Department were present.

¶ 8 Around this time, the court adopted a "contact plan" between the Department and mother because of threatening statements mother had made to caseworkers. The plan provided that all parties were expected to correspond by email, with mother's counsel copied, and that all in-person meetings would occur inside the courthouse.

¶ 9 Two months after mother's counsel withdrew, the court appointed her new counsel and later granted her new attorney's request to continue the termination hearing. The Department filed an amended termination motion.

¶ 10 Nearly two years after the case was opened, the court held a termination hearing at which mother was represented. After the hearing, the court noted that, during the brief period mother lacked counsel, it was "because she insisted on . . . represent[ing] herself." In a written ruling, the court terminated mother's parent-child legal relationship with the child.

## II.    Termination Criteria

¶ 11    A juvenile court may terminate a parent's parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2025.

## III.    Statutory Right to Counsel

¶ 12    Mother contends that the juvenile court violated her statutory right to counsel by failing to (1) "timely appoint" a second attorney and (2) advise her of her right to counsel following the filing of the first termination motion.

¶ 13    Though mother concedes that this issue is unpreserved, she urges that we review her claim to avoid a miscarriage of justice.  *See People in Interest of E.S.*, 2021 COA 79, ¶ 14.  But the miscarriage of justice exception has a high bar and a narrow scope, applying only to limited situations in which an error by the juvenile court, not otherwise properly preserved for appeal, results in a grossly unfair outcome for the parent.  *See People in Interest of M.B.*, 2020

COA 13, ¶¶ 23-24.  Mother's argument does not establish that the termination judgment created such a result.

¶ 14     To start, mother waived her statutory right to counsel during the brief period when she was without counsel.  *See* § 19-3-202(1), C.R.S. 2025 (an indigent parent has a right to court-appointed counsel at every stage of the dependency and neglect proceedings); *see also People in Interest of B.H.*, 2021 CO 39, ¶¶ 65-70 (a parent's statutory right to counsel in dependency proceedings is waivable; the waiver can be express or implied and must only be voluntary, not knowing or intelligent).  The record supports the court's finding that mother wished to be self-represented during this period.  And mother — who does not address waiver — does not assert that any waiver was involuntary.  *See B.H.*, ¶¶ 1, 4, 74 (holding that a parent, who had struggled with mental health issues, voluntarily waived his right to counsel).  Nor did mother request new counsel during this period.  *See People in Interest of Z.P.*, 167 P.3d 211, 213 (Colo. App. 2007) (to invoke the right to counsel, a parent must timely request an attorney be appointed; failure to do so constitutes a waiver of the right).

¶ 15    Based on the foregoing, the court was not required to *sua sponte* appoint mother counsel during this period, contrary to mother's assertion. *See id.*; *People in Interest of V.W.*, 958 P.2d 1132, 1133 (Colo. App. 1998). For the same reason, even assuming that mother was not advised of her right to counsel after the first termination motion was filed, any failure to advise her at that point did not, contrary to mother's contention, violate her statutory right to counsel. *See* § 19-3-602(2), C.R.S. 2025 (after a motion for termination is filed, the parent shall be advised of the right to counsel if not already represented). To the extent she otherwise argues that any lack of advisement at this juncture was error, she fails to demonstrate how the outcome of the case would have been different because of it. Further, it is undisputed that mother was represented at the termination hearing, which took place over three months after new counsel was appointed.

¶ 16    Thus, we are unpersuaded that the lack of appointed counsel for a two-month period resulted in a miscarriage of justice.

### IV.    Appointment of a Second GAL

¶ 17    Mother next asserts that the juvenile court abused its discretion by not appointing her a second GAL after the first GAL

7

withdrew.  She concedes that this issue is unpreserved but again asks us to address it under the miscarriage of justice exception. But even assuming that this issue is properly before us, we discern no reversible error.

¶ 18    A juvenile court may appoint a GAL for a parent who has a behavioral or mental health disorder or an intellectual or developmental disability.  § 19-1-111(2)(c), C.R.S. 2025; *see People in Interest of T.M.S.*, 2019 COA 136, ¶ 5.  The appointment of a GAL for a parent is within the court's discretion.  *T.M.S.*, ¶¶ 6, 10.

¶ 19    Even if we assume, based on the record, that the court should have appointed a second GAL for mother, we conclude that any error was harmless.  *See* C.A.R. 35(c); *People in Interest of R.J.*, 2019 COA 109, ¶ 22 (an error or defect only requires reversal if it affects a substantial right, meaning that it can be said with fair assurance that the error or defect substantially influenced the case's outcome or impaired the basic fairness of the trial itself); *see also People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007) (even for a due process claim, a parent may not obtain relief absent a showing of harm or prejudice).

¶ 20    Mother contends that she was prejudiced because, during the two months she was without a GAL or an attorney, she had no "legal team" to (1) accompany her to a meeting to debrief with the psychological evaluator; or (2) help her communicate with the Department while the contact plan was in place.  She also asserts that concerns about her mental health had "intensified" during this period.

¶ 21    However, mother's assertion of prejudice based on these claims is speculative.  *See R.J.*, ¶ 22.  Mother never discussed the evaluator's treatment recommendations with the case worker.  Nor did she discuss the evaluator's treatment recommendations with the caseworker.  Second, she does not explain how a GAL's assistance in corresponding with the Department during this period would have altered the case's outcome.  And, as the court found, mother "struggle[ed] to accept" help from the professionals in the case.  Third, though the caseworker's concerns about mother's mental health had "intensified" during the case, mother concedes that these concerns persisted throughout the entire case and were a basis for the Department's involvement.

¶ 22     More generally, mother does not explain how the outcome of the proceeding changed because she lacked a GAL for five months of a roughly two-year case.  *See id.*

¶ 23     In addition, the evidence introduced in support of termination was overwhelming, and mother does not challenge its sufficiency. *Cf. B.H.,* ¶ 55 (noting that a due process claim about the appointment of counsel fails where the "risk of an erroneous result at his termination hearing was low").  The child was diagnosed with autism spectrum disorder and had "very specific high needs." Mother participated in only one or two visits during the first year of the case, consistently exercised family time during only a five-month period, and attended no visits during the final six months of the case.  The caseworker opined that mother did not know or understand the child's "very significant" needs and appeared to have lapses with reality that posed a risk to meeting those needs.

¶ 24     Based on the evidence, the court found that mother was unfit and unable to provide nurturing and safe parenting, which was unlikely to change within a reasonable period, in part, because she made no progress toward reunification.  *See* § 19-3-604(c)(I)(B) (in cases where the expedited permanency planning (EPP) provisions

10

apply, such as here, the court shall not find that a parent reasonably complied with their treatment plan where the parent is unable to provide nurturing and safe parenting). And, while it found that mother's consistent engagement was crucial based on the child's tender age and diagnosis, mother last attended parenting time six months before the termination hearing. *See* § 19-3-604(c)(I)(A) (in EPP cases, the court shall not find reasonable treatment plan compliance when the parent has not attended family time as set forth in the treatment plan).

¶ 25    Thus, even assuming that the court should have appointed mother a second GAL, we discern no reversible error.[1]

V.    Reasonable Efforts

¶ 26    Last, mother contends that the juvenile court erred by concluding that the Department made reasonable efforts to rehabilitate her.

---

[1] Mother does not develop an argument that the absence of a GAL during the termination hearing itself prejudiced her or violated her due process rights. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an issue presented without supporting facts or specific argument).

## A. Applicable Law and Standard of Review

¶ 27    To determine whether a parent is unfit, the juvenile court must consider whether the department made reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2025. "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2025. Services provided in accordance with section 19-3-208, C.R.S. 2025, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 28    Among other services, section 19-3-208 requires screenings, assessments, and individual case plans for the provision of services; referral services to available public and private assistance resources; and family time services. § 19-3-208(2)(b). Other services, such as diagnostic and mental health services, must be provided if determined "necessary and appropriate" and the state has sufficient funding for them. § 19-3-208(2)(d).

¶ 29    A juvenile court should holistically measure whether a department made reasonable efforts. *See People in Interest of E.D.,* 2025 COA 11, ¶ 11. And it may consider a parent's unwillingness to participate in treatment in determining this question. *Id.* at ¶ 12.

12

¶ 30    Whether a department satisfied its reasonable efforts obligation is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the court's factual findings for clear error but review de novo its legal determination as to whether the department satisfied its obligation. *Id.*

## B.    Reasonable Accommodations Under the Americans with Disabilities Act (ADA)

¶ 31    Mother argues that the Department's efforts were deficient because it did not make reasonable accommodations for her as required by the ADA. We are not persuaded.

¶ 32    Services provided under section 19-3-208 must comply with the ADA. *See* § 19-3-208(2)(g). The ADA requires a public entity, such as a county department of human services, to make reasonable accommodations for qualified individuals with disabilities. *See People in Interest of C.Z.*, 2015 COA 87, ¶¶ 11-12. A parent may be a qualified individual with a disability if the parent has a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

¶ 33    Whether a parent is a qualified individual with a disability under the ADA requires a case-by-case determination. *People in*

*Interest of S.K.*, 2019 COA 36, ¶ 21. Before a department can be required to provide reasonable accommodations under the ADA, it must know that the individual has a qualifying disability, either because that disability is obvious or because someone has informed it of the disability. *Id.* at ¶ 22. Thus, while a department must provide appropriate screening and assessments of a parent, the parent is responsible for disclosing information regarding their disability. *Id.* at ¶ 21. And a parent should also identify any modifications that they believe are necessary to accommodate their disability. *Id.*

¶ 34 For the first time on appeal, mother argues that the Department did not provide accommodations under the ADA. She concedes that she did not raise the ADA's applicability in the juvenile court but asserts that the Department was "on notice" that she had qualifying "mental health disabilities" for purposes of the ADA.

¶ 35 In light of the juvenile court's finding that mother had a mental health disability, we assume that she had an ADA-cognizable mental health disability. *See* 42 U.S.C. § 12102(1)(A); *see also S.K.*, ¶ 20 (noting that a mental impairment for the

purposes of the ADA includes any mental or psychological disorder such as an "emotional or mental illness" (citation modified)).

¶ 36    But the only specific unprovided accommodation that mother raises is the Department's alleged failure to ensure that her family time providers were trained "to work with" mother's mental health diagnoses.  However, she did not request this accommodation in the juvenile court.  *See S.K.*, ¶ 21.  Thus, the court was unable to determine whether this was a reasonable accommodation.  *See id.* at ¶ 35.[2]

¶ 37    Mother also asserts that she reported she had various health conditions during the case, such as anxiety, PTSD, a traumatic brain injury, a dislocated shoulder, allergies, damaged kidneys, and an issue with her jaw.  But she does not argue that these varying issues are qualifying disabilities under the ADA, nor did she to the

---

[2] To the extent that mother asserts that her statement to the court — that her request for a support person during family time was not being "accommodated" — amounted to a request for a reasonable accommodation under the ADA, we disagree.  Mother did not make this comment within the context of the ADA or her mental health disability.  Nor did mother, who was represented by counsel at the time of the comment, move for a support person to accommodate a disclosed disability.  *See People in Interest of S.K.*, 2019 COA 36, ¶ 21.

juvenile court.  *See* 42 U.S.C. § 12102(1)(A); *S.K.*, ¶¶ 21-22.  Thus, the juvenile court did not have an opportunity to determine whether any of these reported conditions were ADA-cognizable disabilities. *See S.K.*, ¶ 21 n.2 (recognizing that whether a parent is a qualified individual with a disability under the ADA requires a fact-specific determination that a juvenile court must resolve); *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 21, n.1 (noting that the ADA is "inherently fact-dependent" and that an appellate court does not make factual determinations).

¶ 38     Thus, we reject mother's argument that the Department failed to provide reasonable accommodations under the ADA.

## C.     Remaining Contentions

¶ 39     As best we can tell, mother also asserts that the Department made deficient efforts with respect to family time and mental health services.  We disagree.

¶ 40     The juvenile court found that the Department made reasonable efforts to rehabilitate mother, including efforts to arrange family time, provide referrals, and identify appropriate services.  But it found that mother's lack of engagement left the

Department unable to effectuate its goal of rehabilitating mother such that she may safely parent. *See E.D.*, ¶ 12.

¶ 41    The record amply supports the court's findings. The Department referred mother for family time, but she scarcely attended visits outside of a five-month stretch of consistent participation. *See id.* At one point, mother was discharged from a visitation agency because she missed too many visits; while mother asserted that she was on bedrest, she did not provide a doctor's note as the agency had requested. After her last visit, the caseworker continued monthly attempts to contact mother but did not receive a response from her about participating in family time.

¶ 42    The Department attempted to pursue the psychological evaluator's recommendations, but mother's unwillingness to engage hindered those efforts. *See id.* The evaluator recommended (1) treatment modalities, such as cognitive behavioral therapy; (2) focus areas for treatment; (3) reevaluation of mother's psychotropic medications; and (4) obtaining more information to further evaluate mother's diagnoses. But mother did not discuss the evaluator's recommendations with the caseworker, complete a hair follicle test to determine if she was using substances, or complete all releases

requested to communicate with her providers. Instead, according to the caseworker, mother was "very passionate" about not engaging in mental health services and did not report any participation in treatment.

¶ 43 Based on the foregoing, we will not disturb the court's determination that the Department made reasonable efforts. *See id.*; *A.S.L.*, ¶ 15.

## VI. Disposition

¶ 44 The judgment is affirmed.

JUDGE J. JONES and JUDGE DUNN concur.