25CA0465 Peo in Interest of CLH 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0465
Montrose County District Court No. 23JV30029
Honorable D. Cory Jackson, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of C.L.H. Jr., Jas.L.H., and Jax.L.H., Children,

and Concerning A.L.R. and C.M.H. Sr.,

Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE JOHNSON
Welling and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Julie R. Andress, County Attorney, Montrose, Colorado, for Appellee

Alison A. Bettenberg, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, Colorado, for Appellant A.L.R.

Just Law Group LLC, John F. Poor, Denver, Colorado, for Appellant C.M.H. Sr.

¶ 1     A.L.R. (mother) and C.M.H. Sr. (father) appeal the judgment terminating their parent-child legal relationships with C.L.H. Jr., Jas.L.H., and Jax.L.H. (the children).  We affirm.

## I.     Background

¶ 2     In September 2023, the Montrose County Department of Human Services (the Department) received a report that law enforcement had conducted a welfare check at father's home and observed an infected wound on the youngest child's chin.  After the child was admitted at the hospital, the caseworker suggested a safety plan to father, but he refused and threatened to discharge the child from the hospital.  Based on concerns of medical neglect, as well as father's substance use, the Department removed the children and filed a petition in dependency or neglect.

¶ 3     The parents admitted to the petition, and the juvenile court adjudicated the children dependent or neglected.  The court then held a dispositional hearing and adopted treatment plans for the parents.  The parents' treatment plans required them to cooperate with the Department and treatment providers, address their substance abuse and mental health issues, attend family time,

participate in parenting education and life skills, provide a safe and stable home for the children, and comply with their criminal cases.

¶ 4 In August 2024, the Department moved to terminate the parents' parental rights. The juvenile court held a three-day evidentiary hearing. The juvenile court granted the Department's motion and terminated the parent-child legal relationships between the parents and the children under section 19-3-604(1)(c), C.R.S. 2025.

## II. Mother's Appeal

¶ 5 Mother asserts that the juvenile court erred by admitting into evidence the children's hair follicle test results. We need not reach the merits of mother's contention because assuming that the juvenile court erred, any error is harmless.

¶ 6 An error in the admission of evidence is harmless if it does not affect a party's substantial rights. *See* CRE 103(a); C.R.C.P. 61. An error affects a substantial right if it can be said with fair assurance that it substantially influenced the case's outcome or impaired the basic fairness of the trial. *People in Interest of R.J.*, 2019 COA 109, ¶ 22.

¶ 7     At the termination hearing, the juvenile court admitted documents showing that all three children tested positive for methamphetamine in September 2023, shortly before the Department initiated this case.  It is undisputed that the children were in father's care during this time.  The caseworker testified that, when the test results came back positive, the Department knew that father was responsible for the children's exposure because mother "had not even been in the State."  Ultimately, father admitted that he had exposed the children to methamphetamine, resulting in the positive test results.

¶ 8     Therefore, the record shows that father, not mother, exposed the children to methamphetamine.  Neither the Department nor the guardian ad litem argued that mother had exposed them, and the juvenile court did not mention the children's drug tests in its ruling, much less attribute their positive results to mother's actions.  We therefore cannot see how this evidence could be used against mother to justify termination.  Indeed, on appeal, mother provides no explanation as to how this evidence caused her any prejudice.

¶ 9     And regardless of the court admitting this evidence, the record supports the juvenile court's ruling to terminate mother's parental

rights. The court acknowledged mother's inpatient treatment, but it had concerns with mother's ability to remain sober given her long history of use. At the time of the termination hearing, mother did not have a job, nor did she have a place to live where the children could live with her. Mother acknowledged that she did not have permanent housing, admitting she did not know long it would take for her to secure a job and stable housing following inpatient treatment and a period of time at sober living. The court also noted that mother had failed to make all family visits. The court reasoned that the recent engagement — while commendable — was "simply too late in the case to know whether" mother's treatment would rehabilitate her "and address the issues that led this case to open."

¶ 10    Therefore, we conclude that any putative error in the admission of this evidence is harmless, and we reject mother's contention.

### III.    Father's Appeal

### A.    Fit Within a Reasonable Time

¶ 11    Father contends that the juvenile court erred by finding that he could not become fit within a reasonable time. We disagree.

### 1. Standard of Review and Applicable Law

¶ 12     Whether the juvenile court properly terminated parental rights under section 19-3-604 is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 13     To terminate parental rights under section 19-3-604(1)(c), the juvenile court must find, among other things, that (1) the parent is unfit and (2) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c)(II), (III). A parent is unfit if the parent's conduct or condition renders the parent unable or unwilling to give the child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). When deciding whether a parent can become fit within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

## 2. Analysis

¶ 14 The juvenile court found that father was unfit based, in large part, on his substance abuse issues. *See* § 19-3-604(2)(e) (a parent may be unfit based on "[e]xcessive use of intoxicating liquors or controlled substances"). Although the court recognized that father had made some progress by entering an inpatient treatment facility forty-five days before the termination hearing, it did not believe that he could become fit within a reasonable time. *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. 1998) (even "increased compliance" over the course of a case may not justify additional time). In doing so, the court noted father's overall lack of progress over nearly sixteen months and the children's need for permanency, and it concluded that it was not in the children's best interests to "keep the case open to see if [father's] late engagement [would] permanently rehabilitate" him. *See People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006) (a court must consider the child's physical, mental, and emotional conditions and needs in deciding what constitutes a reasonable time).

¶ 15 The record supports the juvenile court's findings. It is undisputed that father had a long history of substance abuse and

6

that he was using methamphetamine when the children were removed from his care. Father did not successfully comply with outpatient treatment, and he admitted to using substances during the case. Father tested positive for methamphetamine when he entered inpatient treatment in December 2024. The caseworker also testified that the children needed permanency as soon as possible and that they could not wait for father to continue working on his sobriety.

¶ 16 Although father made progress toward becoming fit during the case's final two months, the evidence indicates that he still had work to do. The deputy director at father's inpatient treatment facility testified that father had successfully completed phase one (detoxication) and moved on to phase two (cognitive behavioral therapy) of the three-phase program. Still, the deputy director noted that, after graduating, father would need to enroll in intensive outpatient treatment and reside in a sober living facility. Likewise, the caseworker testified that, even if father successfully completed inpatient treatment, he still needed to demonstrate sobriety outside of a structured program, which could take significant time considering father's history of substance abuse.

¶ 17    Father asserts that the juvenile court erred by finding that he could not become fit within a reasonable time because the record shows that he made "substantial progress" during the case. Specifically, he points to the evidence establishing his progress over the case's last two months, along with other favorable evidence, such as evidence that he completed parenting education, had stable housing, and performed well at family time with the children. He also asserts that, because the record shows that he was on the "cusp of becoming fit," the children's need for permanency was not a "sufficient justification" to terminate his parental rights.

¶ 18    Although we acknowledge that there is evidence supporting father's position, there is also ample evidence, as described above, supporting the juvenile court's decision. We must therefore reject father's argument because it would require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

## B. Reasonable Efforts

¶ 19    Father argues that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate him and reunify him with the children. We disagree.

### 1. Standard of Review and Applicable Law

¶ 20    Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

¶ 21    In deciding whether to terminate parental rights, the juvenile court must consider whether the department made reasonable efforts to rehabilitate the parent and reunite the parent with the child. *See* §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. The reasonable efforts standard is satisfied if the department provides appropriate services in accordance with section 19-3-208. § 19-1-103(114). These services may include (1) screening, assessments, and individual case plans; (2) home-based family and

crisis counseling; (3) information and referral services; (4) family time; and (5) placement services. § 19-3-208(2)(b).

## 2. Analysis

¶ 22 Relying on the caseworker's testimony, the juvenile court found that the Department had made reasonable efforts to rehabilitate father, but he did not adequately participate in the services to become a fit parent. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12 (the court may consider a parent's unwillingness to participate in determining whether the department made reasonable efforts). The record supports the court's findings. Among other things, the record shows that the Department provided father with a substance abuse evaluation and referred him to outpatient treatment services, but as described above, father did not comply with those services. The Department also provided father with sobriety monitoring, parenting classes, and supervised family time.

¶ 23 Still, father asserts that the juvenile court erred by finding that the Department made reasonable efforts because the Department did not timely provide him with substance abuse resources. We are not persuaded.

¶ 24    In January 2024, father's treatment provider closed, and some of the therapists who had worked there formed a new business. Father told the caseworker that he wanted to remain with his therapist at the new business, but the caseworker said that the Department could not pay for treatment services there because it did not have a contract with the new business. The caseworker offered to refer father to an approved provider so the Department could pay for his treatment, but he declined.

¶ 25    Father asserts that the Department delayed his treatment because it did not give him a clear answer on whether it would pay for his services at the new business. To the contrary, the caseworker testified that she specifically told father that the Department did not have a contract with the new business and offered to refer him to a different provider. Father chose to remain with his therapist, even though he knew that the Department could not fund those services. Under these circumstances, we cannot say that the juvenile court erred by finding that the Department made reasonable efforts.

¶ 26    Father also submits that the Department (1) delayed referring him to inpatient treatment after he requested it in July 2024 and (2)

11

refused to pay for that treatment after his Medicaid lapsed. As to the former, the caseworker testified that when she discussed inpatient treatment with father in July 2024, he said that "he wanted to prove to the Department that he could do it without being in-patient." As to the latter, the caseworker said that the Department did not have additional funds to pay for inpatient treatment services and had to rely on Medicaid for those services. *See* § 19-3-208(2)(b)(V) (requiring departments to provide "[d]rug and alcohol treatment services" only if additional funding is available). Regardless, the caseworker testified that father did not request inpatient services or tell her about the Medicaid issue until November 2024, and she could not do anything at that point because she did not have contact with father again until she discovered that he was already enrolled in treatment.

¶ 27 Finally, father argues that the Department failed to develop an appropriate treatment plan because the plan did not address domestic violence. The caseworker testified that domestic violence was not included as a separate component because it was not one of the issues that necessitated the case's filing. The caseworker said that those issues became a concern later in the case but noted

that they could be addressed through father's mental health component and his individual treatment requirement. Therefore, the record shows that, although the treatment plan did not include a domestic violence component, the Department made efforts to address those issues by providing father with mental health and substance abuse services. We therefore discern no error.

### C.     Less Drastic Alternative

¶ 28     Finally, father submits that the juvenile court erred by finding that there was no less drastic alternative to termination. We disagree.

#### 1.     Standard of Review and Applicable Law

¶ 29     Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 30     A viable less drastic alternative must do more than adequately meet a child's needs; rather, it must be in the child's best interests. *A.M.*, ¶ 27. Therefore, if the court considers a less drastic

alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. Under those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 81.

### 2. Analysis

¶ 31 Initially, the Department placed the children with paternal relatives, but it removed them in June 2024 and placed them in foster care. The Department investigated maternal relatives for placement, including two home studies in other states, but it did not find any relatives who were appropriate and willing to accept placement.

¶ 32 According to the caseworker, father requested that the Department investigate his stepfather as a placement option after the Department had already moved to terminate in August 2024. The caseworker performed a preliminary background check and discovered that stepfather had several referrals with his own daughter for neglect and physical abuse. The Department also had concerns that stepfather could not be a long-term placement because he remained married to paternal grandmother, who had

her own serious substance abuse issues. Ultimately, the caseworker admitted that she never reached out to stepfather because there were too many issues that could not be mitigated.

¶ 33　In contrast, father testified he had asked the Department to investigate stepfather when the children were removed from the relatives in June 2024. Likewise, stepfather testified that he had called the Department and left several messages asking the Department to consider him as a placement option, but no one from the Department ever returned his calls.

¶ 34　Stepfather testified at the hearing that he was still willing to be a placement for the children. Stepfather said that he had a good relationship with the children, but he admitted that he had not had any contact with them since 2023. He did not know about any of the children's special needs and claimed that the children "never needed any behavioral things." And in stepfather's opinion, father had always met the children's needs.

¶ 35　Based on this record, the juvenile court rejected less drastic alternatives to termination. In doing so, the court rejected an APR to stepfather as a less drastic alternative to termination because (1) the Department ruled him out and (2) "based on his testimony, he

[did] not appear to be able to meet the children's needs." Finally, based on the caseworker's expert opinion, the court found that an APR would not be in the children's best interest because they needed the permanency of an adoption. *See People in Interest of A.R.,* 2012 COA 195M, ¶ 41 (an APR to a relative is not a less drastic alternative to termination when it does not provide adequate permanency or otherwise meet the children's needs).

¶ 36    Father asserts that the juvenile court erred by finding that there was no less drastic alternative to termination for two reasons. We disagree with both.

¶ 37    First, father asserts that the Department did not adequately investigate a less drastic alternative involving "other members of the [c]hildren's extended family." But father's assertion fails because, for purposes of less drastic alternatives, the Department only has a duty to evaluate family members identified by the parents. *See People in Interest of Z.P.,* 167 P.3d 211, 215 (Colo. App. 2007) (The department is not obligated to "independently identify and evaluate other possible placement alternatives."). And father has not pointed us to anything in the record to show that he suggested other family members for placement.

¶ 38    Second, father maintains that the Department did not adequately evaluate stepfather. Although father and stepfather testified about the Department's lack of efforts in this area, the caseworker provided contrary testimony that supported the court's decision. Because we cannot override the court's credibility determinations to reach a different decision, we reject father's assertion. *See A.M.,* ¶ 15 (noting that witness credibility determinations are left to the juvenile court's sound discretion). In any event, we also reject father's assertion because, even assuming that the stepfather was an appropriate placement option, the juvenile court found, with record support, that an APR was not a less drastic alternative because the children needed the permanency of an adoption. *See People in Interest of Z.M.,* 2020 COA 3M, ¶ 30 (An APR "is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption.").

IV.    Conclusion

¶ 39    The judgment is affirmed.

JUDGE WELLING and JUDGE GROVE concur.

17